IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CATHERINE PITTS, | : |
| Plaintiff | : |
| v. | : 5:06-CV-56 (WDO) |
| HOUSTON COUNTY BOARD OF EDUCATION, | : |
| Defendant | : |

## ORDER

Plaintiff Catherine Pitts, an African-American female and former employee of Defendant school district, filed this case claiming discriminatory termination based on racial and gender discrimination. Defendant Houston County Board of Education[1] contends Plaintiff was terminated for gross negligence that resulted in a nearly $13,000 loss to the school district and has filed a motion for summary judgment requesting that Plaintiff's claims be dismissed.

*Factual and Procedural Background*[2]

Catherine Pitts was hired by the Houston County school district in September of 2001

---

[1] The Houston County Board of Education is not an entity capable of being sued. Rather, Plaintiff should have named the "school district" as the proper defendant in this case. See Cook v. Colquitt County Bd. of Educ., 412 S.E.2d 828 (Ga. 1992). However, the Court will address the claims as if they were addressed against the proper party, the Houston County school district.

[2] These are the material facts presented in the record with any dispute by Plaintiff noted and with all facts construed in Plaintiff's favor as the non-movant.

1

as the secretary to the Director of Transportation, Frank Scott, an African-American male. Plaintiff's responsibilities included, among other things, processing the paperwork when employees in the Transportation Department were hired or their employment ended as a result of resignation or termination and forwarding that paperwork to the Human Resources Department. Plaintiff's responsibilities also included distributing envelopes that contained either payroll checks or automatic deposit stubs to employees in the department.[3] When employees failed to pick up their checks on payday, Plaintiff was required to place the envelopes in the mail and make a list of the names of each employee to whom she mailed the envelopes.

The Transportation Department's procedure for handling resignations required Plaintiff to forward a resignation form signed by a supervisor or the Director to Human Resources. Plaintiff was required to also make copies of the paperwork and file it in the employee's personnel file or resignation notebook that were in her office. When the opportunity presented itself, an employee's supervisor would conduct an exit interview and send the documentation of that interview to Human Resources. However, depending on the circumstances of their departures, not all employees received exit interviews. Ron Busbee, the Director of Human Resources, provided an affidavit[4] in which he noted that receipt of resignation forms by Human Resources triggers that office's preparation of the paperwork

---

[3]Pitts Dep., Def. Ex. 3, 9.

[4]Doc 11-6 (Def.'s Mot. for Summ. J., Busbee Aff.).

that must be sent to the Payroll Department to prepare the employee's last pay check.

In December of 2003, one of the bus drivers, Cynthia Mosley, placed a handwritten note of resignation[5] under the door of the office of the Transportation Department. Although Plaintiff contends she sent the handwritten note to Human Resources, that department never received the note or the proper resignation form. Plaintiff admitted receiving the handwritten resignation note but also admitted that she did not forward a resignation form for Ms. Mosley to Human Resources.[6] Plaintiff's supervisor Gladys Alford, an African-American female, tried to contact Mosley to conduct an exit interview but the interview was never conducted because Mosley never returned Alford's phone call about the interview.[7]

Even though Plaintiff knew Mosley had resigned, Plaintiff continued to mail payroll checks or automatic deposit stubs to Mosley for more than a year.[8] When she mailed the checks to Mosley, Plaintiff handwrote Mosley's name on a list of employees to whom she mailed the envelopes.[9] Mosley's name appears in Plaintiff's handwriting on these lists at least 9 different times between January 2004 and May 2005. Plaintiff was asked in August of 2004 to complete employee address verification lists for Human Resources.[10] The instructions were

---

[5]Doc. 20, Plf.'s Ex. 16.

[6]Pitts Dep. at 92.

[7]Alford Dep. at 6, 9.

[8]Pitts Dep. at 114-126.

[9]Pitts Dep. at 115, 120.

[10]Pitts Dep., Def. Ex. 18.

3

that Plaintiff was to review the name to ensure each person listed was an active employee; that the list should not include any employee who had resigned; and, that if the list did include an employee who had resigned or had been terminated, Plaintiff should write "TERM" next to their name. Plaintiff failed to note on this list that Mosley had resigned. Plaintiff contends it was because this list came to her office the day she went out on maternity leave. However, the list was supposed to be completed and sent to Human Resources by 8:00 a.m. that morning and Plaintiff worked until lunch that day. Plaintiff also mailed Mosley a W-2 form in January of 2005 even though she knew Mosley had not worked since December of 2003.[11] Plaintiff never inquired of or notified the Payroll Department when she kept receiving Mosley's paycheck stubs month after month. The error was not discovered until May of 2005 when Ms. Alford was assisting Plaintiff with mailing the payroll checks and noticed the envelope addressed to Mosley.[12] Alford asked Plaintiff why Mosley was receiving a check if she had resigned so Plaintiff called the Payroll Department about the situation. Plaintiff searched her files for Mosley's resignation paperwork and found a copy of the handwritten note, not in the resignation notebook but in Mosley's personnel file in the Transportation Department.

After several meetings were held about this situation, the school district decided to terminate Plaintiff Pitts, the reason given was that the incident showed a serious, grossly

---

[11] Pitts Dep. at 152.

[12] Alford Dep. at 4; Pitts Dep. at 167.

negligent failure to pay attention to detail the result of which cost the school district nearly $13,000. Although the school district filed charges against Mosley for the money and has attempted to otherwise recover the money, the school district has been unable to recover any of the money.

Plaintiff Pitts filed a charge of discriminatory termination, based on race and gender, with the EEOC. After its investigation, the EEOC issued its determination that it could not conclude that discrimination had occurred and issued a Notice of Right to Sue. Plaintiff thereafter filed suit in this Court alleging discriminatory termination based on race and gender.

### *Summary Judgment Standard*

Summary Judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court has explained that the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an

essential element of her case with respect to which she has the burden of proof. Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact." Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). "Summary judgment . . . is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (citing Fed. R. Civ. P. 1; Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984)).

### *Discrimination Claims*

Plaintiff Pitts contends she was terminated because of her race and gender based on her belief that there were Caucasian and/or male employees with performance problems who were not suspended or terminated. Plaintiff Pitts failed to present direct evidence of discrimination such as specific statements or conduct by employment decision-makers that reflected a bias or discriminatory animus toward a particular protected class. Therefore, Plaintiff's claims are based on circumstantial evidence and subject to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Koch v. Rugg, 221 F.3d 1283, 1291 n.31 (11th Cir. 2000). Plaintiff is required to present evidence that (1) she is a member of a protected class - African-American or female for purposes of Plaintiff's claims; (2) she was qualified for the job in question; (3) she was terminated; and (4) an

individual who was not a member of her protected class replaced her or that she suffered from disparate treatment because of membership in the protected class. Bolton v. Potter, 198 Fed. Appx. 914, 916 (11th Cir. 2006) (citing McDonnell Douglas Corp., 411 U.S. at 802, Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir.2000)).

Plaintiff established a prima facie case of racial discrimination because she is African-American, she was objectively qualified for the job in question, she was terminated and she was replaced by a Caucasian individual. Because Plaintiff contends the same facts support both discrimination claims, for purposes of this discussion, the Court will also assume Plaintiff presented a prima facie case of gender discrimination. Defendants are therefore required to articulate some legitimate, non-discriminatory reason for Plaintiff's termination. If Defendants make this showing, Plaintiff has an opportunity to show that Defendant's stated reasons for her termination are actually pretext for a discriminatory motive. Plaintiff may succeed in this "by persuading the court that a discriminatory reason more likely motivated the employer" or by showing that the employer's proffered explanation is not worthy of belief. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (citation omitted). Plaintiff may also establish discrimination if she produces evidence that she was treated *less* favorably than similarly situated employees of a different race or gender *because of* Plaintiff's race or gender. To show that comparator employees are similarly situated, Plaintiff Pitts must show that the employees are similarly situated in all relevant respects. "If an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1317 n.5 (11th Cir.

2003) (citations omitted). In making these determinations, the Court must be careful to not allow Plaintiff to simply litigate whether she was a good employee. Cain v. Walton County School Dist., 2006 WL 581195, *7 (Mar. 8, 2006 M.D. Ga.) (citing Rojas v. Fla., 285 F.3d 1339, 1342 (11th Cir.2002)).

Plaintiff Pitts contends she did not violate any particular policy or procedure and performed her job in the manner she thought was appropriate and, therefore, she should not have been terminated. However, the decision-makers in this case believed that Plaintiff's repeated instances of gross negligence warranted her termination and their interpretation of Plaintiff's conduct can be considered because they honestly believed Pitts violated the general policies and procedures as alleged. Knight, 330 F.3d at 1318 n.6 (citing Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir.1989) ("The law is clear that, even if a Title VII claimant did not in fact commit the violation, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.")). The Court need not determine that the decision-makers were correct in their assessment of Pitts' performance; it need only determine that the decison-makers in good faith believed her performance to be unsatisfactory and that the asserted reason for the discharge is not pretext for discrimination. Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) (citations omitted). An employer has a right to interpret its rules as it chooses, "and to make determinations as it sees fit under those rules. [The anti-discrimination statutes only prohibit] discrimination." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) (citation omitted). Often mistaken for more than what it is,

most plaintiffs fail to comprehend that "Title VII is not a federal 'civility code.'" Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999). While an employee who receives criticism or negative evaluations in the workplace may suffer in some way, the protections of Title VII simply do not extend to every action that makes an employee unhappy. Davis v. Town of Lake Park, 245 F.3d 1232, 1242 (11th Cir. 2001). The federal courts do not "sit as a super-personnel department that reexamines an entity's business decisions," nor do they "sit to second-guess the business judgment of employers." Id. at 1244 (citations omitted). An employer may "fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix, 738 F.2d at 1187. Courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [their] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir.1999). The record reflects that the decision-makers in this case in good faith believed Pitts' performance to be unsatisfactory.

Plaintiff provided a great deal of speculation and assumptions as to why she was allegedly treated differently from her Caucasian and male colleagues. However, her belief or feeling that some action by the school district was discriminatory does not show that discrimination actually occurred. Rather, the Court must examine the record to determine whether Plaintiff in fact suffered disparate treatment discrimination by examining the comparators' conduct as compared to the Plaintiff's conduct. The individuals Plaintiff Pitts identified as comparators, those who allegedly committed more serious infractions yet were

9

not terminated, are as follows:

Jean Sheridan, a Caucasian female, was the secretary of the Transportation Department prior to Plaintiff Pitts. About 5 months after Sheridan began working in this position in 1993, a bus driver who had resigned received two or maybe three monthly paychecks because the resignation paperwork had not been completed and sent to Human Resources.[13] At the time, there were two secretaries in the office and each thought the other had completed the paperwork. Although Sheridan had never mailed a payroll check or stub to the driver, Sheridan discovered the error after two or three checks were sent and immediately notified the Payroll Department. First, none of the supervisors involved in the decision to terminate Plaintiff Pitts supervised Sheridan in 1993. See Silvera v. Orange County School Bd., 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) ("differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination") (citation omitted). More importantly, the school district believed that sending two or three monthly paychecks to an employee was far less serious than failing to notice for 17 months that an employee was still wrongfully receiving paychecks. Sheridan's situation may not be legally compared to Plaintiff's situation because Sheridan's was far less serious as it occurred only two or three times and caused a loss of approximately $1,500 as opposed to $13,000.

Yvonne Draper, a Caucasian female, is employed in the Transportation Department and is responsible for scheduling busses at times other than the regular morning and afternoon

---

[13]Sheridan Dep. at 6.

routes, such as field trips. Draper filled in for Plaintiff Pitts while Plaintiff was on maternity leave for 3 months. Plaintiff contends that while she was on leave Draper sent Mosley payroll checks and therefore should also be disciplineed. In her affidavit, Draper stated that she does not recall putting any checks or stubs in the mail to Mosley, and there is no evidence she did.[14] Further, if Mosley received checks during this period it was only a few times and Draper had no knowledge Mosley had resigned, was no longer working or that she should not have received checks. Cleary then, the situation with Draper was not nearly as serious as the situation with Plaintiff.

Samuel Daniels, a Caucasian male, was a bus driver who made a stop to give a tour of his new home to an African-American female student, and perhaps to use the restroom, at the conclusion of his bus route one afternoon. The student's family was friends with Daniels and her parents did not object to the stop. However, the school district suspended Daniels for 3 days because of the impropriety of being along with a student in such circumstances. Based on the consent of the parents and the fact that this incident did not cost the school district any money, this situation is not legally comparable to what happened with Plaintiff, and Daniels was in fact suspended.[15]

Roy McGee, an African-American male, was a shop foreman who had 5 or 6 accidents in school district vehicles. He was demoted to a mechanic position and prohibited from

---

[14]Doc. 11-8, (Def.'s Mot. for Summ. J., Draper Aff., ¶ 3); Thublin Dep. at 63.

[15]Scott Dep. at 60-61.

driving school district vehicles. Plaintiff contends he should have been more harshly disciplined and was not because he is a male. However, it is not for the Plaintiff or this Court to decide who should be disciplined and at what level. Rather, the only determination for this Court is whether discipline is doled out in a discriminatory fashion and there is no evidence of that in this case.[16]

Alfred Brown, an African-American male, was employed as a bus monitor. Brown was terminated for failing to respond to a fight on a bus. Again, although Plaintiff used this as an example of "gender discrimination," the school district disciplined him with the exact same discipline Plaintiff received.[17]

Jean Faulk, a Caucasian female, was employed in the Transportation Department. Plaintiff contends she paid other department employees "under the table" when there were some problems with their payroll paperwork yet was not terminated or otherwise disciplined. However, the deposition testimony shows that Ms. Faulk personally loaned money to some employees between pay periods and the school district did not prohibit employees loaning money to each other. This in no way establishes racial discrimination against the Plaintiff.[18]

Finally, on one occasion there was a fight on one of the busses and the parents and grandparents of the children and the media requested to see the videotape of the incident, because the busses were videotaped by the school district. Plaintiff contends that, because

---

[16]Thublin Dep. at 34; Scott Dep. at 67.

[17]Scott Dep. at 65-66.

[18]Scott Dep. at 62-63.

12

the tape could not be immediately located, her boss, Frank Scott, was told to "destroy" the tape. However, everyone involved denied having a conversation about destroying the tape and the tape was found after a couple of days.[19]

Defendant provided a legitimate, non-discriminatory reason for Plaintiff's termination - repeated incidents of gross negligence that resulted in a nearly $13,000 loss to the school district. The school district chose to hold Plaintiff primarily responsible for the loss because it was the Plaintiff, and only the Plaintiff, who had numerous opportunities to recognize the costly error.[20] Plaintiff rejected this explanation by the school district by claiming that she was not the only one responsible for the error. However, the other individuals the school district could have chosen to also hold responsible but did not were in Plaintiff's protected classes: Frank Scott, Director of the Transportation Department, is an African-American male; Plaintiff's supervisor, Gladys Alford, is an African-American female. Plaintiff also claimed that it was the fault of the Payroll Department for its failure to notice that time sheets were not being turned in for Mosley. However, bus drivers are paid a regular rate of pay for their regularly scheduled hours and time sheets are submitted to the Payroll Department only if they work over the time scheduled. In the absence of receipt of records reflecting work by a bus driver over the regularly scheduled hours, the Payroll Department automatically generates a

---

[19]Thublin Dep. at 35; Scott Dep. at 63-66.

[20]Doc. 20, Plf's Ex. 9; Thublin Dep. at 71; Busbee Dep. at 18, 26; Scott Dep. at 26; Pitts Dep., Def. Ex. 12, 13, 14, 16, 23, 24, 25, 26, 27, 31 (payroll records).

monthly check.[21] Further, a Caucasian warehouse supervisor had been terminated because of "racial insensitivity;"[22] a Caucasian female bus driver was terminated for running into another bus;[23] and, the school district produced a chart of all the employees who have been terminated over the past four years that clearly demonstrates the school district disciplines and terminates employees of all races and genders for many different reasons.[24] Regarding Plaintiff's termination, there is absolutely no evidence whatsoever of any discriminatory animus on the part of the school district. Because Plaintiff failed to rebut the school district's legitimate, non-discriminatory reason for her termination by producing evidence of discriminatory animus, Defendant school district is entitled to summary judgment on Plaintiff's claims.

**SO ORDERED this 13th day of March, 2007.**


**S/
WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**

---

[21] Doc. 25-2 (Def.'s Reply, Bembry Aff.).

[22] Thublin Dep. at 37.

[23] Scott Dep. at 57-58.

[24] Doc 11-7 (Def.'s Mot. for Summ. J.).